UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

LARRY BERNARD YOUNG,

    Defendant.

_____/

Case No. 16-cr-20713

HON. MARK A. GOLDSMITH

**OPINION & ORDER
REGARDING DEFENDANT'S VIOLATIONS OF THE CONDITIONS OF
SUPERVISED RELEASE**

This matter is before the Court on a petition filed by the probation office alleging that Defendant Larry Bernard Young violated conditions of supervised release (Dkt. 28). Not long after starting his four-year term of supervised release on May 10, 2019, Young is alleged to have: (i) assaulted his domestic partner, Veronique Parker, on October 30, 2020; (ii) tested positive for using marijuana on October 27, 2020; and (iii) consumed alcohol on October 30, 2020. Id. at 2–3.

On June 14, 2021, the Court held a hearing to determine whether Young violated the conditions of his supervised release. During the hearing, Young accepted responsibility for the second and third violations involving his use of marijuana and consumption of alcohol. Hr'g Tr. at 8–11 (Dkt. 43). However, he contested the first violation concerning his alleged assault of Parker. Id. at 4, 8–9. For the reasons that follow, the Court finds that Young assaulted Parker and, therefore, violated the condition that he not commit any crimes. A sentencing hearing will be set by separate order.

# I. BACKGROUND

On March 16, 2017, Young pleaded guilty to possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1). Judgment (Dkt. 27).[1] He was sentenced to 35 months of incarceration, to be followed by four years of supervised release. Id. The conditions of Young's supervised release require, in relevant part, that he (i) not commit another federal, state, or local crime, (ii) refrain from any unlawful use of a controlled substance, and (iii) not use or possess alcohol in any consumable form. Id. Young was released from the U.S. Bureau of Prisons' custody and began his term of supervised release on May 10, 2019.

On October 30, 2020, Young was arrested and charged with assault with intent to do great bodily harm and domestic violence. On that date, officers responded to a 911 call where Parker could be heard in the background screaming, "Why did you hit me?" When officers arrived at the scene, Parker informed them that Young had come home after a night of drinking and that the two began arguing. She stated that Young assaulted her, put her in a headlock, threw her on the couch, and strangled her. Officers noticed red marks on Parker's face and neck. The charges, however, were ultimately dropped. Hr'g Tr. at 25.

On November 10, 2020, a summons for violation of supervised release was issued for Young. On November 17, 2020, Young made his initial appearance before Magistrate Judge Curtis Ivy, Jr. and was released on an unsecured bond, with the special condition that he have no direct or indirect contact with Parker. Order Setting Conditions of Release at 3 (Dkt. 33).

---

[1] This matter was originally assigned to the Honorable John Corbett O'Meara, who presided over Young's plea hearing and sentencing; the case was reassigned to the undersigned on November 20, 2019.

On June 14, 2021, the Court held an evidentiary hearing regarding the supervised release violations. During the hearing, the Government presented testimony from Corporal Richard Townsend, one of the officers who responded to the October 30, 2020 incident. Additionally, the Government introduced a recording of the 911 call and photographs depicting Parker's injuries and the scene of the incident. The defense called Parker as a witness. The defense also submitted three exhibits: (i) a character reference from the mother of Young's children; (ii) a letter from Young's employer; and (iii) Young's Veteran Administration records indicating that he suffers from post-traumatic stress disorder, depression, and anxiety.

## II. STANDARD OF DECISION

If a person violates conditions of supervised release, the Court may "revoke [the] release, and require the person to serve in prison all or part of the [supervised release] term . . . without credit for time previously served on postrelease supervision . . . ." 18 U.S.C. § 3583(e)(3). To revoke a term of supervised release, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); see also United States v. Givens, 786 F.3d 470, 471 (6th Cir. 2015).

The preponderance standard requires a lesser quantum of proof than the "proof beyond reasonable doubt" standard applicable at a trial. See In re Winship, 397 U.S. 358, 367–368 (1970). Revocation hearings are "more flexible than a criminal trial," and courts may rely on any relevant evidence, including hearsay that is proven to be reliable. United States v. Stephenson, 928 F.2d 728, 732 (6th Cir. 1991). Notably, a conviction for a new offense is not necessary for a finding of a violation, and proof of culpable conduct by a preponderance of the evidence is sufficient for revocation. U.S.S.G. § 7B1.1 n.1 ("The grade of violation does not depend on conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding.

Rather, the grade of the violation is to be based on the defendant's actual conduct.").

### III. ANALYSIS

Here, a preponderance of the evidence establishes that Young violated the conditions of supervised release by committing a new offense. The Government maintains that Young committed the misdemeanor of assault and battery, in violation of Mich. Comp. Laws § 750.81, and the felony of assault with intent to commit great bodily harm, in violation of Mich. Comp. Laws § 750.84(1). Section 750.84(1) provides as follows:

> A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both:
> (a) Assaults another person with intent to do great bodily harm, less than the crime of murder.
> (b) <u>Assaults another person by strangulation or suffocation</u>.

Id. (emphasis added). The statute defines "strangulation or suffocation" as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." Id. at § 750.84(2).

In the 911 recording, Parker can be heard repeatedly accusing Young of hitting her and pleading with him to leave the house. 911 Recording at 00:08–00:20. The recording clearly evidences that Parker was distraught and thoroughly shaken, and she can be heard crying throughout much of the recording. See, e.g., id. at 00:30–00:40; 01:25–01:35. During the hearing, Townsend testified that the 911 operator informed him that she heard the victim ask, "Why did you choke me?" Hr'g Tr. at 13. Townsend's review of the tape was consistent with this assessment. Id.; see also 911 Recording at 01:17–01:20.

Townsend testified that when he arrived at the scene, he observed that Parker was emotionally distraught and that her clothes were disheveled. Hr'g Tr. at 14. Townsend also

4

smelled the odor of alcohol on Young, and Parker stated that Young had been out drinking. Id. at 14–15. In addition, Townsend noticed that the home was in disarray, with couch cushions out of place, a broken dish on the floor, and other items scattered throughout the house. Id. at 16; Photographs of Residence.

Townsend further testified that Parker reported to the officers that Young assaulted her following an argument about her children's father. Id. at 15–16. Specifically, Parker stated that Young put her in a headlock or chokehold and struck her on the face. Id. In the police report, Townsend recorded Parker's description that Young threw her onto the couch and began strangling her. Id. at 32–33. Parker further reported that Young told her that he would kill her and that he did not care if he went back to jail. Id. Consistent with this report, Townsend stated that he observed redness on Parker's face and neck. Hr'g Tr. at 16. Although photographs of Parker's face and neck do not show any discernable injury, the quality of the images may obscure any redness or bruising. See Photographs of Parker.

During the evidentiary hearing—held eight months after the incident—Parker recanted her report to the police and claimed that she called 911 because she wanted Young out of her house. Hr'g Tr. at 41–42. Parker recounted that she and Young began to argue about her communications with the father of her children. Id. at 39–40. During the course of the argument, she grabbed Young's phone, while he grabbed hers. Id. In an effort to get her phone back, Parker began hitting and scratching Young. Id. at 40. Young then began to push her, and the two fell onto the couch. Id. at 40–41. Parker denied that Young hit her, choked her, or put her in a headlock, but she stated that she falsely told police that Young choked her. Id. at 41–42. She explained that she called 911 and told the police Young choked her in order to "get [him] out of the house" because she was angry at him for cheating on her. Id.

5

Parker's testimony during the evidentiary hearing is not credible in light of the countervailing evidence. Parker's statements on October 30, 2020 during the 911 call and to law enforcement were spontaneously made while under the stress of the incident. Consistent with her statements to police, Parker was found screaming, crying, disheveled, and with red marks on her face and neck. The home was also in disarray. Additionally, Parker gave a detailed description to the police about the verbal argument, physical attack, and Young's threat to kill her. Her subsequent testimony that she was simply angry and wanted Young out of her home is unconvincing when viewed in light of this evidence pointing to a serious physical altercation. Though Parker tried to minimize the role played by Young—a man with whom she has been romantically involved for nearly six years—her testimony was contradicted by the physical evidence, 911 recording, and Townsend's testimony.

Moreover, Parker provided conflicting information during the hearing. For example, though Parker admitted that she falsely told police that Young choked her, id. at 41–42, she later denied ever telling the police that Young had choked her, id. at 47. Additionally, Parker said she has been in a relationship with Young from 2015 through 2021. Id. at 44. However, she later stated that she had not seen, texted, called, or spoken to Young since the assault on October 30, 2020. Id. at 49. Finally, Parker newly alleged during the hearing that she hit and scratched Young during the altercation in October 2020; however, she admittedly never previously told law enforcement that she was a mutual combatant. Id. at 46–47.

Because the Court does not find Parker's hearing testimony to be credible, it rejects Young's argument that Parker was the aggressor during the October 30, 2020 altercation such that he acted in self-defense. Therefore, the Court finds by a preponderance of the evidence that Young assaulted Parker, in violation of Mich. Comp. Laws § 750.81, and assaulted Parker by

strangulation, in violation of Mich. Comp Laws § 750.84(1)(b).  Having found Young in violation of the conditions of his supervised release, the Court will set a hearing for sentencing.

SO ORDERED.

Dated: July 16, 2021  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 16, 2021.

s/Karri Sandusky  
KARRI SANDUSKY  
Case Manager